**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **MADISON ACQUISITION GROUP, LLC,** | : | |
| **Plaintiff** | : | No.  **23-7770** |
| | : | |
| **v.** | : | |
| | : | |
| **LOCAL 259 UNITED AUTO WORKERS,** | : | |
| **AFL-CIO and INTERNATIONAL UNION** | : | **NOTICE OF REMOVAL** |
| **AUTOMOBILE, AEROSPACE, AND** | : | |
| **AGRICULTURAL IMPLEMENT WORKERS** | : | |
| **OF AMERICA, UAW,** | : | |
| **Defendants** | : | |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT** Defendant, Local 259, United Auto Workers by its undersigned counsel, hereby files this **Notice of Removal** pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446 for removal of the above-captioned litigation from Supreme Court of the State of New York County of Nassau Index No. 613687/2023 to the United States District Court for the Eastern District of New York.

### I.       INTRODUCTION

1.       This action was brought against the Defendant, in the Supreme Court of the State of New York County of Nassau Index No. 613687/2023 to confirm an arbitration award and seek attorneys' fees.

## II.     PARTIES

2.     Defendant Local 259, United Auto Workers ("Defendant Union") is an unincorporated association commonly referred to as a labor union.

3.     At all relevant times, Plaintiff was an employer signatory to a collective bargaining agreement with the Defendant Union.

## III.    PROCEEDINGS TO DATE

4.     On or about August 23, 2023, Plaintiff filed a Complaint in the ("State Court Action").  On October 10, 2023, Plaintiff filed an Amended Notice of Verified Petition to Confirm Arbitration Award.

## IV.    TIMELINESS

5.     Defendant Union was personally served on October 11, 2023. Defendant Union timely files this Notice of Removal within thirty (30) days of that acceptance of service as required by 28 U.S.C. § 1446(b).

## V.     JURISDICTION AND GROUNDS FOR REMOVAL

6.     Plaintiff has invoked a right covered by a collective bargaining agreement grievance and arbitration procedure.

7.     The Court has federal question jurisdiction because Plaintiff's claims are governed by Section 301(a) and (c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and (c), and the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq. As such, this action may be removed to this Court under 28 U.S.C. § 1441(a). *Caterpillar, Inc. v. Williams*, 482 U.S.

386, 392 (1987). A federal question is presented where a civil action arises under federal law. 28

U.S.C. § 1331.

8.      The present lawsuit is removable from state court to the United States District

Court for the Eastern District of New York pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.


**VI.      COPY OF ALL STATE COURT FILINGS**

9.      Pursuant to 28 U.S.C. § 1446(b)(1), a true and correct copy of the State Court

Action Complaint is attached hereto as Exhibit A.  A true and correct copy of the Amended

Notice and Verified Petition to Confirm an Arbitration award is attached hereto as Exhibit B. A

true and correct copy of the State Court Action case docket is attached hereto as Exhibit C.


**VII.     CONSENT OF ALL PARTIES**

10.     The only named defendant in this action is responsible for this removal and so the

consent requirement of 28 U.S.C. § 1446(b)(2)(A) has been met.


**VIII.   VENUE**

11.     Plaintiff 's State Court Action in the Supreme Court of the State of New York

County of Nassau Index was filed in the which is within this judicial district. This Court is thus

the proper venue for removal under 28 U.S.C. §§ 1441(a).


**IX.     NOTICE**

12.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of

Removal will be promptly given to Plaintiff and a Notice of the Notice of Removal will be

promptly filed with the Supreme Court of the State of New York County of Nassau after the filing of this Notice.

### X.     SUPPLEMENTAL JURISDICTION

13.     This Court has supplemental jurisdiction of any additional claims pursuant to 28 U.S.C. §§ 1367 and 1441(c).

### XI.     CONCLUSION

Based on the foregoing, the above-captioned action, now pending in the Supreme Court of the State of New York County of Nassau Index No. 613687/2023, is removed to this Court and this Court may proceed as if this case had been originally initiated in this Court.

<div style="margin-left:40%">

Respectfully submitted,

CLEARY, JOSEM & TRIGIANI LLP

BY:     */s/ Joseph T. Cleary*
Joseph T. Cleary, Esquire
Regina C. Hertzig, Esquire
Constitution Place
325 Chestnut Street – Suite 200
Philadelphia, PA   19106
(215) 735-9099
(215) 640-3201 (fax)
jtcleary@cjtlaw.org
rhertzig@cjtlaw.org
*Counsel for Defendant UAW Local 259*

</div>

October 18, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, a true and correct copy of the foregoing Defendant's NOTICE OF REMOVAL was served upon counsel for Plaintiff, by electronic mail and United States Postal Service, regular mail, as follows:

Christopher Smith, Esquire
Trivella & Forte, LLP
1311 Mamaroneck Avenue, Suite 170
White Plains, NY  10605
111csmith111@gmail.com


I hereby certify that upon filing of this NOTICE OF REMOVAL, a true and correct copy will be promptly e-filed with the NOTICE OF NOTICE OF REMOVAL at the New York Supreme Court, Nassau County.

*/s/ Regina C. Hertzig*
Regina C. Hertzig, Esquire
*Counsel for Defendant UAW Local 259*

October 18, 2023

# EXHIBIT A

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM
NYSCEF DOC. NO. 1

SUPREMNE COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X

In the Matter of the Application of

MADISON ACQUISITION GROUP, LLC,

                              Petitioner,

for a Judgment Pursuant to Article 75 of the Civil Practice
Law and Rules Confirming an Arbitration Award,

              -against-

LOCAL 259, UNITED AUTO WORKERS, AFL-CIO,

                    Respondent.

-------------------------------------------------------------------X

**Index Number:** _ _ _ _ _ _ _ _

**VERIFIED PETITION
TO CONFIRM AN
ARBITRATION AWARD**

**Assigned to:**

       The Petitioner, MADISON ACQUISITION GROUP, LLC, by its attorneys, TRIVELLA & FORTE, LLP, respectfully shows and alleges and duly affirms pursuant to CPLR Rule 2106 under penalty of perjury as follows:

       1.    Petitioner operates the automobile dealership BMW/Mini at Southampton, with offices at 35 Montauk Hwy Southampton, NY, 11968-4122.

       2.    Petitioner is an employer for employees at the automobile dealership known as BMW/Mini at Southampton, including mechanics and technicians working at 35 Montauk Hwy Southampton, NY, 11968-4122.

       3.    Upon information and belief, Respondent Local 259 United Auto Workers, AFL-CIO, with its principal office at 80 Jerusalem Avenue, Hicksville, NY 11801 in the County of Nassau, State of New York, is a labor union that represents certain employees employed by Petitioner at BMW/Mini at Southampton.

       4.    The Petitioner designates Nassau County as the place of trial. The basis of venue

3

is the principal office of the Respondent, which is 80 Jerusalem Avenue, Hicksville, NY 11801.

CPLR 503.

5.      Respondents and Petitioner are parties to a collective bargaining agreement governing the terms and conditions of employment of the Petitioner's employees. A copy of the collective bargaining agreement is at Exhibit A (hereinafter "Collective Bargaining Agreement"). The Collective Bargaining Agreement contains an agreement for the parties to arbitrate their disputes over the interpretation and enforcement of the Collective Bargaining Agreement.

6.      By written arbitration demand dated September 21, 2021 Respondent Local 259 United Auto Workers, AFL-CIO filed a grievance against the Petitioner and proceeded to arbitrate before the American Arbitration Association on the issue of "Employer violating the CBA Article 36-401K Plan." A copy of the Arbitration Notice is annexed at Exhibit B.

4.      After due notice, a hearing was duly held by the Arbitrator, Elena Cacavas, Esq. (hereinafter "Arbitrator") on July 14, 2022. Both Petitioner and Respondent appeared on that date, stipulated to the issues to be arbitrated, were represented by counsel, and were afforded a full and fair opportunity to be heard and introduce evidence and submit post-hearing briefs.

5.      After the Arbitrator reviewed the facts, circumstances, exhibits and proofs entered at the hearing, and after considering all the evidence and arguments submitted and after due deliberation thereon, the Arbitrator made her Award ("the Award") in writing, dated and duly affirmed on October 14, 2022. The Award was served upon the parties by email. A copy of the Award is annexed hereto as Exhibit C.

6.      The Award has not been vacated or modified upon any ground specified in CPLR 7511. This Petition is filed within one year of issuance and service of the Award.

7.      No prior application has been made for the relief requested herein in this or

4

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 1

INDEX NO. 613687/2023

RECEIVED NYSCEF: 08/23/2023

any Court.

WHEREFORE, the Petitioner respectfully requests the Court enter an Order pursuant to CPLR 7510 confirming the aforesaid Arbitration Award and awarding the Petitioner its attorneys' fees in confirming the award and such other, further or different relief as the Court may deem proper.

Duly affirmed August 18, 2023

White Plains, New York

Yours, etc.,

TRIVELLA & FORTE, LLP

/s/Christopher Smith_____
Attorneys for the Petitioner
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
(914) 949-9075

5

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 1

INDEX NO. 613687/2023

RECEIVED NYSCEF: 08/23/2023

## VERIFICATION

STATE OF NEW YORK    )
                            )ss.:
COUNTY OF SUFFOLK    )

        JAY DECKER, General Manager to MADISON ACQUISITION GROUP, LLC,

being duly sworn, deposes and states:

I am the General Manager of MADISON ACQUISITION GROUP, LLC, the Petitioner in the

within matter. I have read the annexed Verified Petition and know the contents thereof and the

same is true to my knowledge, except those matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.

                                            JAY DECKER
                                            General Manager
                                            MADISON ACQUISITION GROUP, LLC

Sworn to before me this _22_

day of August, 2023.

Notary Public

TAYANEE SYKES
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01SY6170586
Qualified in SUFFOLK County
Commission Expires JULY 9 2027

6

FILED: NASSAU COUNTY CLERK 08/03/2021 01:21 PM    INDEX NO. 610090/2021
NYSCEF DOC. NO. 2                                 RECEIVED NYSCEF: 08/03/2021

# Exhibit

# "A"

FILED: NASSAU COUNTY CLERK 08/20/2021 01:28 PM          INDEX NO. 619680/2021
NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 08/03/2021

COLLECTIVE BARGAINING AGREEMENT

Between

Madison Acquisition Group LLC
d/b/a
BMW & MINI of Southampton

And

United Automobile Workers Local 259

January 1, 2021 through December 31, 2023

| TABLE OF CONTENTS | | |
|---|---|---|
| ARTICLE | SUBJECT | PAGE |
| 1 | Coverage | 1 |
| 2 | Union Shop | 1 |
| 3 | Checkoff | 2 |
| 4 | Compliance with Regulations | 2 |
| 6 | Probationary Period | 3 |
| 7 | Shop Stewards | 3 |
| 8 | Discrimination | 3 |
| 9 | Discharge/Discipline | 4 |
| 10 | Grievance and Arbitration | 4 |
| 11 | Leave of Absence | 5 |
| 12 | Seniority | 5 |
| 13 | Promotions | 6 |
| 14 | Military Service | 6 |
| 15 | Personal Days | 6 |
| 16 | Workweek | 6 |
| 17 | Alternate Work Week | 7 |
| 18 | Wages | 7 |
| 19 | Roadside Assistance | 8 |
| 20 | Vacations | 8 |
| 21 | Holidays | 9 |
| 22 | Sick Leave | 9 |
| 23 | Furlough Days | 9 |
| 24 | Tool Insurance | 10 |
| 25 | Jury Duty | 10 |
| 26 | Bereavement | 10 |
| 27 | Strikes or Lockouts | 10 |
| 28 | Union Representatives | 11 |
| 29 | Compensable Injury | 11 |
| 30 | Notice of Layoff | 11 |
| 31 | Health and Safety | 11 |
| 32 | Miscellaneous | 12 |
| 33 | Bulletin Boards | 12 |
| 34 | Uniforms/Work Clothes | 12 |
| 35 | Labor/Management Meetings | 13 |
| 36 | Local 259 Health & Benefit Fund | 13 |
| 37 | 401k Plan | 14 |
| 38 | Legality | 15 |
| 39 | Training | 15 |
| 40 | Work Distribution | 15 |
| 41 | Management Rights | 15 |
| 42 | Term of Agreement | 16 |
|  | Appendix A | 17 |

FILED: NASSAU COUNTY CLERK 08/03/2023 10:31 PM
INDEX NO. 619680/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 08/03/2023

## AGREEMENT

AGREEMENT made and entered this 11th day of December 2020, by and between Madison Acquisition Group LLC, d/b/a BMW & Mini of Southampton (hereinafter referred to as the "Employer") and United Automobile Workers Local 259 located at 80 Jerusalem Avenue, Hicksville, New York, 11801, (hereinafter referred to as the "Union") and its International Union, United Automobile, Aerospace, And Agricultural Implement Workers Of America, U.A.W. 8000 East Jefferson Avenue, Detroit, Michigan 48214.

## WITNESSETH

WHEREAS, it is the intent and desire of the parties hereto to foster and promote sound, stable and peaceful labor relations between the Employer, its employees covered by this agreement, and the Union, and to establish a basic understanding relative to rates of pay, hours of work, and other conditions of employment; and

WHEREAS, it is the further intent and desire of the parties hereto establish an orderly relationship between the Employer and the employees so that grievances and complaints will be settled quickly.

## SUCCESSORS I ASSIGNS

This Agreement shall be binding on all parties hereto, their legal representatives and shall survive any sale, change of name, reorganization, or incorporation.

NOW, THEREFORE, the parties hereto mutually agree as follows:

## ARTICLE 1 -COVERAGE

The Employer recognizes the Union as the duly authorized representative and the exclusive bargaining agent for all full-time and regular part- time mechanics/technicians employed by the Employer at 35 Montauk Highway, Southampton, NY 11968. Said recognition by the Employer shall also extend to any location to which the aforementioned mechanics/technicians maybe transferred by the Employer. Said mechanics/technicians may be hereinafter referred to collectively as "covered", "unit" or "employees." Excluded are all non-technical employees, such as lot and porter employees, sales and clerical/secretarial employees, managers, professional employees, supervisors, guards, and watchmen, as defined in the Act.

## ARTICLE 2 - UNION SHOP

A    It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the

3

execution or effective date of this Agreement, whichever is later, shall remain members in good standing for the term of this Agreement, and those who are not members in good standing on the execution or effective date of this Agreement, whichever is later, shall on the thirty first (31st) day following the execution or effective date of this Agreement, whichever is later, become and remain members in good standing in the Union for the term of this Agreement. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its execution or effective date, shall after thirty days from the beginning of such employment and for the term of this Agreement, become and remain members in good standing in the Union. The requirement of membership in good standing under this section is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly required.

B.    The Employer shall immediately upon hiring of an employee notify the Union in writing of such employment, giving the employees name, address, date of hire and position. Upon notice from the Union to the Employer that any employee is delinquent in payment of, or has failed to tender the initiation fee and periodic dues uniformly required as a condition of acquiring and/or retaining membership in good standing, the Employer shall immediately discharge such employee and advise the Union thereof in writing by Certified Mail, Return Receipt Requested, of its action taken. The Union agrees to hold the Employer harmless from any liability arising from the discharge of any employee at the request of the Union.

ARTICLE 3 - CHECKOFF

The Employer agrees to deduct from the earnings of the employees weekly, the periodic dues and any initiation fees due the Union. Upon receiving the written authorization of the employee in compliance with all requirements of law, and to transmit such sums to the Union by the fifteenth (15) day of the current month for which it is due.

ARTICLE 4- COMPLIANCE WITH REGULATIONS

A.    No person other than the unit employees covered by this Agreement shall perform any work covered by this agreement except in an emergency with the permission of the Union unless otherwise agreed by the parties.

B.    There shall be no individual contract between the Employer and any of the unit employees pertaining to wages, hours of work, or other conditions or terms of employment within the bargaining unit.

ARTICLE 5 - PROBATIONARY PERIOD

Each new unit employee shall be a probationary employee for a period of ninety (90) calendar days of continuous employment from the employee's last date of hire. The Employer may request a thirty (30) day extension of probation and the Union will not

4

FILED: NASSAU COUNTY CLERK 08/07/2023 10:01 PM    INDEX NO. 619690/2023

NYSCEF DOC. NO. 2                                              RECEIVED NYSCEF: 08/03/2023

deny such extension. The Employer shall have the absolute right to discharge a probationary employee without cause and such action is not subject to the grievance or arbitration provisions of this Agreement. Upon satisfactory completion of the probationary period, the employee shall be given seniority credit from the employee's most recent date of hire, and the employee shall not be discharged except as provided herein. ARTICLE 6- SHOP STEWARD

A.      Employer recognizes the Union's designated shop steward and officials as the Union's authorized representatives for the purpose of resolution of grievances hereunder.

B.      The Shop Steward shall suffer no loss of pay for time spent by them during regular working hours in the handling of grievances, provided however that to the extent possible such handling of grievances shall be scheduled to take place outside such hours by mutual agreement.

C.      Except as may be otherwise agreed, the Shop Steward shall be deemed to head the seniority list for layoff purposes during their tenure of such office. The Employer shall recognize a unit employee as shop steward only after receiving written notice from the Union of the election of such bargaining unit member as shop steward.

D.      The Employer shall allow one (1) day training with pay and one (1) day training without pay per year for the Shop Steward to attend Union Conferences / Training Seminars.

ARTICLE 7 - DISCRIMINATION

The Employer shall not discriminate against any unit employee because of membership in the Union or legitimate activities in its behalf. There shall be no discrimination in rates of pay, classifications, promotions, or other working conditions, in violation of applicable City, State and Federal laws.

ARTICLE 8- DISCHARGE/DISCIPLINE

No unit employee may be discharged or disciplined except for just cause. No employee may be discharged or suspended for more than three (3) days without a hearing. The Employer agrees to give three (3) days' notice prior to the discharge or discipline of any employee, except in the case of drunkenness, gross negligence, dishonesty, or any crime involving such member's employment. In the event of any dispute with respect to the justification of any discipline or discharge, unless otherwise agreed between the parties, the matter shall be taken up as a grievance and submitted to resolution according to the procedure hereinafter set forth in Article 10. In the event that such matter is submitted to arbitration, the arbitrator shall be deemed to have the power to order the reinstatement of such employee with or without back pay.

5

FILED: NASSAU COUNTY CLERK 08/07/2021 01:21 PM INDEX NO. 619010/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 08/03/2021

ARTICLE 9 ·GRIEVANCE AND ARBITRATION

A       Any dispute concerning the interpretation or application of the terms of the Agreement or any dispute between the parties shall be taken up between the parties pursuant to the following procedure:

1.      All alleged grievances shall, within fifteen (15) days of their occurrence or discovery, first be presented to the service manager by the unit employee or shop steward covering the employee, or both.

2.      The Service Manager shall within five (5) days after the presentation of the grievance, give his/her disposition to the shop steward and unit employee.

3.      If the grievance is not satisfactorily resolved by the service manager, the unit employee, Shop Steward and the Local Union Representative shall meet with the general manager or his/her designee within five (5) working days after the conclusion of step two.

B.      Arbitration:

1.      In the event the above procedures do not result in a satisfactory resolution of the grievance or dispute in question, then the dispute shall be submitted to arbitration. Unless the parties agree to designate an arbitrator, the matter shall be submitted to the American Arbitration Association in accordance with its procedures. The Arbitrator's findings, decisions and awards shall be final, binding, and conclusive on both of the parties hereto and judgment thereon may be entered in any Court or Forum having jurisdiction. Unless otherwise agreed, the Arbitrator's fee, if any, shall be borne equally by the Employer and the Union.

2.      The Union and the Employer may agree to dispense with the first step and take up such matters directly with each other. No arbitrator shall have any power to add to, subtract from, alter, change, or modify any term of this Agreement.

ARTICLE 10- LEAVE OF ABSENCE

The Employer may grant an employee an unpaid leave of absence for up to thirty (30) days for personal reasons. The unit employee shall submit his/her request for such leave in writing at least two (2) weeks in advance, if possible, unless the leave is necessitated by extraordinary circumstances.

ARTICLE 11 - SENIORITY

A.      Seniority shall be computed from the date of hire in the establishment or date of hire with the Employer whichever is longer not counting recalls after layoffs. It is further understood that the assignment of work, will be distributed by Employer as equitably and

6

FILED: NASSAU COUNTY CLERK 08/03/2021 01:21 PM          INDEX NO. 619680/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 08/03/2021

efficiently as possible on a rotational basis according to seniority.

B.      It is recognized by the parties that the Employer's location results in seasonal workload variations and that in slow periods, layoffs may become necessary. Probationary employees shall be laid off before any permanent unit employee. If, after all probationary employees have been laid off, other reductions in the work force are necessary, the Employer shall lay-off, in accordance with principals of seniority i.e., last hired, and laid-off first pursuant to Paragraph E herein. If a laid off employee fails to respond to notification of the opportunity to return to work from lay-off within seven (7) calendar days after receipt of notice, sent by the Employer, by certified and regular first-class mail to the employee of such opportunity, he/she shall lose all seniority rights.

C.      Unit employees with two (2) years or less of service, who have been laid off for a period greater than their length of service with the Employer prior to any such layoff, shall lose all seniority rights upon the expiration of such period.

D.      Unit employees shall not be removed from their place on the seniority list for two (2) years or their length of service, whichever is less, when they are continuously absent from work for such period because of sickness, or injury, provided notification of such sickness or injury has been given to the Employer.

E.      Layoffs shall be by classification, defined as technician A, B, C, and brand. Employees subject to layoff shall exercise their right to bump the least senior employee in another classification that they are qualified to perform. Employees who exercise such bumping rights shall maintain their seniority rights for recall pursuant to Article 12 of the Agreement.

F.      While employees are on layoff, employees currently classified in another brand, shall not perform any work in that brand that the layoff has occurred, except for those current employees working in another brand, who shall continue to perform such work. Employees with less than one (1) year seniority, Part Time employees, and Apprentice employees will be laid-off first before any employee regardless of classification.

G.      Employees who exercise such bumping rights, resulting in displacing a bargaining unit employee, shall be paid at the displaced employees existing rate of pay.

ARTICLE 12 - PROMOTIONS

The parties recognize that it is desirable to grant promotional opportunities within the bargaining unit to unit employees rather than hire new employees from outside sources. However, the parties also recognize that such promotional opportunities are subject to various qualifications, such as the question of the ability, skill, and physical fitness of an employee to perform a job which is open for promotion. Accordingly, the Employer will offer educational opportunities and training to enhance the possibility of promotional

7

FILED: NASSAU COUNTY CLERK 08/03/2021 01:28 PM INDEX NO. 619680/2021

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 08/03/2021

opportunities for the unit employees subject to ability, skill, and physical fitness of the employee to perform the work. All changes in classifications of unit employees are subject to revision and approval by the Classification Committee made up of the Union Representative, shop steward, and one (1) bargaining unit member, the Shop Foreman and two other management persons.

## ARTICLE 13- MILITARY SERVICE

In the event an employee is drafted or enlist in the armed services, said employee, upon honorable discharge, shall be entitled to reinstatement without loss of seniority to the position held at the time of joining the armed services and shall receive such rate of pay as shall at the time of reinstatement represent the current rate of pay, for the position, in the Employers establishment.

## ARTICLE 14 - PERSONAL DAYS

All employees shall be entitled to three (3) personal days per calendar year. Should an employee take no personal days in a given calendar year, an additional personal day shall be added to the following year. All unused days shall be paid one (1) week prior to Christmas provided that any payment in advance of that accrual of such days shall either be returned or deducted from succeeding paychecks, as employee shall request, in the event such days are thereafter taken.

## ARTICLE 15 - WORK WEEK

A.      The regular work week shall be five (5) consecutive days per week, forty (40) hours per week, eight (8) hours per day, from Tuesday through Saturday inclusive, 8:00 a.m. to 4:30p.m. with one half (1/2) hour for lunch from 12 noon to 12:30 p.m. The parties recognize that the needs of the business may require earlier or later starting time in individual cases or times. It is specifically understood that changes in starting time shall be limited to a period of up to one (1) hour prior to or after the normal starting time and to a starting time no later than 9:00 a.m. Such starting time shall be staffed whenever possible on a volunteer and/or new hire basis. The Employer shall notify the Union of the details of said changed starting time.

B.      The Employer shall allow two (2) paid coffee breaks a day, totaling (1/2) hour, one (1) in the morning and one (1) in the afternoon, of fifteen (15) minutes duration each. Break time shall not be considered in the calculation of any incentive times.

C.      The Employer shall offer available overtime on a volunteer basis in accordance with seniority on a rotating basis.

D.      Overtime – clock hours times 1.5 or flagged hours, whichever the greater.

8

FILED: NASSAU COUNTY CLERK 08/03/2021 08:28 PM INDEX NO. 619880/2021
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 08/03/2021

## ARTICLE 16 -ALTERNATE WORK WEEK

A.      The Employer may offer as an option to all bargaining unit employees the opportunity to work an alternate work week, eight (8) hours per day, Monday through Friday inclusive, 8:00AM to 4:30PM with one half (1/2) hour for lunch from 12:00PM to 12:30PM. The minimum amount needed for adequate staffing for such alternate work week shall be two (2) bargaining unit employees. In the event that additional unit employees elect to work such alternate work week it shall be offered on a seniority basis and in conformity with the Employers operational requirements.

B.      Employees who select this work schedule shall continue to have two (2) consecutive days off (Saturday and Sunday).

C.      This provision shall apply from the first Monday of March to the last Friday of December unless otherwise agreed upon by mutual consent.

D.      Minimum staffing shall be on a volunteer basis only, except where the Employer is not able to obtain minimum staffing requirements it shall revert to the least senior employee.

## ARTICLE 17- WAGES

A.      Attached, hereto, and made a part hereof as Appendix "A", is a schedule of hours, wages, overtime, classification, and other conditions of employment, and shall be considered a part of this agreement the same as if written herein.

B.      The Employer shall set up a payroll system for direct deposit which shall be offered as an option to the employees.

## ARTICLE 18 - ROADSIDE ASSISTANCE

Unit employees performing roadside assistance duties shall be paid their base hourly rate in addition to applied Repair Order (RO) time.

## ARTICLE 19- VACATIONS

A.      All unit employees shall receive paid vacations as follows:

| | |
|---|---|
| 1 year of service | 1 week |
| 2 years of service | 2 weeks |
| 5 but less than 15 years of service | 3 weeks |
| 15 years or more of service | 4 weeks of vacation with pay |

Effective January 1, 2011 for those employees with two (2) years or more of service shall

FILED: NASSAU COUNTY CLERK 08/07/2023 10:31 PM
INDEX NO. 619007/2023

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 08/07/2023

be reinstated to their full vacation entitlement as provided for in the Agreement.

B.    A day of vacation shall be eight (8) times the basic hourly rate, as defined in sub-Section F.

C.    Weeks of vacation(s) shall be scheduled throughout the year. During the period of January 1 through March 31, employees exercise their seniority rights by placing their vacation selection(s) on the vacation calendar, which shall be posted for all employees to utilize. The vacation calendar shall be posted by the Employer outside the office of the Service Director. Seniority shall prevail in case of a dispute as to who rates priority in scheduling a given week(s).

D.    If vacation periods are scheduled through a paid holiday, then the employee affected shall have their vacation period extended one (1) day or receive an extra day's vacation pay in lieu thereof at the employee's election.

E.    If a unit employee with six (6) months seniority or more is laid off, said employee shall be entitled to receive pay for earned vacation on a pro-rata basis for the actual time worked to date in the calendar year of such layoff. In cases of discharge for theft, or offense(s) involving financial or employment misfeasance, no vacation pay will be allowed.

F.    Vacation pay shall be based on the previous year's weekly average number of hours actually paid, including guarantee and incentives. Such pay shall be calculated at the employee's current prevailing hourly rate at the time the vacation is taken.

G.    Vacation Buy Back: At the employee's option, a maximum of one (1) week vacation shall be paid to the employee no later than the last payroll prior to Christmas each year.

H.    To maintain shop efficiency and production, when the technician staff is less than 10, no more than one (1) technician, during the period of May 1 through September 1, shall be on vacation during the same week(s), unless approved by management. Failure to exercise seniority rights as noted in paragraph C above within the application period shall waive the employee's preferential selection for vacation week(s) during this period.

I.    Vacation week(s) should be scheduled no less than 14 days from the actual vacation week(s) selected. Management may approve vacation week(s) without such notice at their discretion.

## ARTICLE 20 • HOLIDAYS

A.    The following holidays are to be paid for at eight (8) times the basic hourly rate, and four (4) times the basic hourly rate for those 1/2-day holidays, except when the operation is closed, a full day off with pay shall be given for New Year's Eve and Christmas Eve, regardless of the day proclaimed for their observance or the day on which they occur:

| New Year's Day | Thanksgiving Day |
|---|---|
| Memorial Day | Christmas Eve Day |

10

| Independence Day | Christmas Day |
| Labor Day | New Year's Eve Day ½ |

B.         In order for a new unit employee to be eligible for a paid holiday, as identified above, the employee must be in the employ of the Employer for sixty (60) days. However, after such sixty (60) days of employment, pay for any such holiday otherwise payable, shall be paid retroactively.

C.      When a holiday falls on an Employees normal day off a unit employee may take the prior workday off or can take another day off with pay within thirty (30) days of the holiday.

D.      In order to get paid for a holiday a unit employee must work the day before and the day after unless authorized by a manager or have an emergency situation, which can be supported by documentation if so, requested by the Employer.

ARTICLE 21 ·SICK LEAVE

A.      There shall be seven (7) paid sick leave days per calendar year as of January 1st each year. Newly hired unit employees shall earn sick days at the rate of one (1) day per month not to exceed seven (7) days. All unused sick leave shall be paid for one (1) week prior to Christmas each year. Unit employees with six (6) months seniority or more, who are laid off, shall be paid for all unused sick leave and in the event an employee has been paid sick leave in advance of accrued time, the Employer shall be permitted to deduct the unearned portion of the sick leave from amounts payable thereafter.

B.      The Employer agrees that unit employees who resign shall be paid for accumulated sick leave. Employees who are terminated for cause will receive no accumulated sick pay.

ARTICLE 22- FURLOUGH DAYS

Furlough Days: During the term of the Agreement employees shall have the option with thirty (30) days' notice to the Employer to take up to five (5) days off without pay.

ARTICLE 23 - TOOL INSURANCE

The Employer agrees to insure the tools of each unit employee up to a maximum declared value of ten thousand ($10,000) or be liable for same, upon submission and verification of the amount of value of said tools.

ARTICLE 24 - JURY DUTY

A.      When a unit employee is summoned for Jury Duty, the employee shall not be paid

11

FILED: NASSAU COUNTY CLERK 08/28/2023 10:01:21 PM   INDEX NO. 619680/2021

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 08/03/2023

by the Employer except as provided herein. Upon presentation of original documentation of actual jury duty attendance and payment such employee shall be paid the difference between the base wages he would have earned, and the daily Jury Duty fee paid by the Court.

B.  Pay for a unit employee's Jury Duty service shall not exceed payment for twenty (20) Full or partial days in any one (1) year.

C.  After receipt of Jury Duty notice, the unit employee should present said notice to the Employer the next working day.

D.  Any unit employee who is temporarily excused from attendance at Court must report for work if a reasonable period of time remains to be worked on such day.

E.  All transportation monies paid by courts with respect to jury service shall be retained by the employee.

## ARTICLE 25- BEREAVEMENT

A.  In the event of death in the immediate family of a unit employee, said employee shall be paid up to three (3) days' pay at the basic hourly rate for actual time lost.

B.  The term "immediate family" shall include the employee's spouse, or previously designated life partner, children, step-children in household, mother, father, mother-in-law, father-in-law, grandparents, grandchild, brother, sister, brother-in· law and sister-in-law.

## ARTICLE 26 - STRIKES OR LOCKOUTS

The parties agree that there shall be no lockouts on the part of the Employer, and no strikes, discharges, slowdowns, or concerted stoppages of work on the part of the Union or the unit employees during the term of this agreement. It is understood and agreed that the foregoing shall not apply in the event any party fails to carry out a final award of an arbitrator, it being understood that no award shall be deemed final until either party fails to appeal through the applicable judicial processes from such award, or having appealed, the award is held to be final and binding.

## ARTICLE 27- UNION REPRESENTATIVES

Properly accredited representatives of the Union shall have reasonable access at all times to the premises of the Employer provided such access does not interfere with the normal flow of business and further provided that a proper official of the Employer is notified of such representatives arrival.

FILED: NASSAU COUNTY CLERK 08/28/2023 01:21 PM INDEX NO. 619680/2023

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 08/28/2023

ARTICLE 28 - COMPENSABLE INJURY

Any unit employee who requires time off for medical attention for an injury received while working shall be paid for such time up to one (1) normal day less any Workers Compensation or other such benefits actually received or available upon application.

ARTICLE 29 - NOTICE OF LAYOFF

Except with respect to probationary employees, the Employer shall give ten (10) working days' notice of layoff to unit employees affected or give ten (10) days' pay in lieu thereof unless the layoff is necessitated by an act of God, such as fire, flood, electrical blackout or snowstorm resulting in declared snow emergency.

ARTICLE 30 - HEALTH AND SAFETY

A. The Employer agrees to provide working conditions that comply with all manufacturers' recommendations and all laws dealing with safety and sanitary conditions, (e.g., OSHA, Dept. of Health, etc.).

B. All shop equipment and systems (lifts, doors, heat, light, exhaust fans, etc.) will be maintained and repaired by qualified and licensed repair people, e.g., electricians and plumbers.

C. The Employer agrees to furnish locker facilities for all unit employees.

D. The Employer agrees to keep hot water and proper washing facilities available during all normal working hours.

E. The Employer agrees to keep adequate medical supplies on hand at all times.

F. The Employer agrees to provide proper automobile exhaust gas evacuation systems, proper appropriate heat in the winter, necessary and adequate lighting facilities, and adequate ventilation.

G. To the extent physically possible, all emergency phone calls or notice thereof shall be given to the unit employee immediately. Messages for all other calls will be routinely forwarded to unit employee, as long as such process is not abused.

H. Employer will provide a clean break/lunchroom for unit employees.

I. Employer will provide an apparatus for moving disabled vehicles in and out of the shop.

13

J.      The Employer will maintain shop equipment in safe and workable condition.

K.      The Employer shall provide an adequate number of latex gloves to employees in the performance of their work.

L.      Employees shall not be required to lift in excess of sixty (60) lbs. without assistance or a device to aid in such lifting.

## ARTICLE 31 - MISCELLANEOUS

A.      The Employer agrees to make the shop available to unit employees one (1) day or evening per week to service their own personal vehicles.

B.      Employees will be permitted to perform NYS inspections on their own such vehicles without charge except for the New York State sticker.

C.      Employer may request reasonable proof or documentation to support an employee's claim for benefits under Article 21 for absences of three (3) days or more.

D.      Employer will provide all necessary special shop tools for use by unit employees.

E.      Employer will provide adequate and appropriate parking for all employees.

F.      Employer shall endeavor to upgrade the shop heating/cooling system and set available thermostats at a temperature that will maintain a temperature of not less 68° or more than 80° during applicable seasons and shall adjust such thermostats to maintain such temperature.

## ARTICLE 32 - BULLETIN BOARDS

The Employer agrees to furnish the Union with one or more Bulletin Boards in a conspicuous and convenient location, which shall be known as the Union Bulletin Board, for the sole use of the Union, except that no material derogatory to or adversely reflecting upon the Employer shall be posted therein.

## ARTICLE 33- UNIFORMS/ WORK CLOTHES

The Employer shall provide to each employee every calendar year eleven (11) sets of uniforms and two (2) jackets, five (5) cotton shirts during the warm weather season and gloves with replacements on an as needed basis. In addition, the Employer shall provide for the cleaning of the uniforms/ work clothes for each unit employee.

## ARTICLE 34 - LABOR/MANAGEMENT MEETINGS

In order that the Union and the Employer can openly address the operational concerns of

14

FILED: NASSAU COUNTY CLERK 08/03/2021 08:18 PM INDEX NO. 619699/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 08/03/2021

employees and the Employer, the parties shall establish quarterly meetings between representatives of the Union, the unit employees, and the Employer.

ARTICLE 35- LOCAL 259 HEALTH & BENEFIT FUND

A.      The Employer agrees to submit reports and contribute to the UAW Local 259 Social Security Department Health and Welfare Fund on a monthly basis. Contributions shall be payable on the 25th of month proceeding the month that coverage is applicable. beginning with the contribution. The Employer further agrees to adopt and agree to be bound by the Trust Agreement that governs that Fund.

01/01/21

| Coverage Type | Employer Rate 89.5% | Employee Rate 10.5% | Total Contribution 100% |
|---|---|---|---|
| Family | 1497.03 | 175.63 | 1672.66 |
| Individual | 1003.71 | 117.75 | 1121.46 |

01/01/22

| Coverage Type | Employer Rate 89.5% | Employee Rate 10.5% | Total Contribution 100% |
|---|---|---|---|
| Family | 1557.53 | 182.73 | 1740.26 |
| Individual | 1044.05 | 122.48 | 1166.53 |

01/01/23

| Coverage Type | Employer Rate 89.5% | Employee Rate 10.5% | Total Contribution 100% |
|---|---|---|---|
| Family | 1619.60 | 190.00 | 1809.60 |
| Individual | 1085.93 | 127.40 | 1213.33 |

B.      In addition to the Employer contributions, employee contributions as determined by the Union, shall be deducted from their pay checks in compliance with applicable law on a pre-tax basis, which shall be remitted with the Employer contributions.

C.      The employee contributions shall be deducted from their pay checks in compliance with applicable law on a pre-tax basis which shall be remitted with the Employer contributions.

D.      The full amount of the above contributions shall be remitted by the Employer for all covered employees by the twenty fifth (25th) of the preceding month for which coverage is effective. Together with such payments there shall be remitted to the Fund statements showing the name of each employee and social security number for whom contributions are made. The Employer shall be bound by and agrees to comply with all administrative rules, regulations and decisions issued, made, or promulgated by the Fund including any and all amendments and changes therein. The parties hereto confirm and approve the

15

FILED: NASSAU COUNTY CLERK 08/03/2021 08:28 PM    INDEX NO. 619080/2021
NYSCEF DOC. NO. 2                                 RECEIVED NYSCEF: 08/03/2021

composition and membership of the Board of Trustees of the Fund as now and hereafter constituted. The Union and the Fund shall have the right to examine the Employers books and records for the purpose of determining whether the Employer has complied with the provisions of this Article.

E.    In the event a dispute arises in connection with the failure of the Employer to make the required payments due to the Fund, the Union shall have a right to require the Employer to pay interest on such arrears at the rate per month up to the maximum permitted by law.

## ARTICLE 36 - 401K PLAN

The Employer shall provide a 401K Plan on behalf of all unit employees. Such plan shall provide for unit employee contributions only. Notwithstanding however, in the event the Employer were to make contributions on behalf of any non-bargaining unit employee or any other employee in another bargaining unit employed by the Employer equal contributions shall be made on behalf of all Local 259 bargaining unit employees enrolled in the plan. Upon written request by the Union, the Employer shall provide any and all payroll documentation, (i.e., payroll register) for an in-camera review by a party to be determined by the Union, to determine compliance with this Article.

## ARTICLE 37 - LEGALITY

If any provision of this collective bargaining agreement should be held or adjudged illegal, or in violation of any present or future law, such adjudication shall not invalidate any other portion or provisions of this Agreement, nor relieve either party thereto from their liabilities and obligations under this agreement, but the same shall continue in full force and effect. In the event that any portion of said Agreement is held illegal as above-mentioned, the parties agree promptly to meet in order to agree upon a proper and legal substitute, therefore.

## ARTICLE 38 -TRAINING

The Employer agrees to give employees opportunity for professional training to maintain proficiency levels and product currency at least once a year and when otherwise necessary as a result of product developments. All unit employees shall have equal opportunities to attend product training classes on a rotation basis within manufacturer units and skill levels and to meet factory and Employer requirements for updating product knowledge and maintaining or advancing classification certification. Unit employees shall receive base pay for all time of actual attendance at such training plus travel allowance and reasonable food and lodging expenses. If the employee attends training on a regular day off the employee may choose between being paid or receiving compensating time off, provided, however, that any comp time so elected shall not be included in determining hours worked during the week in which such training occurs.

16

## ARTICLE 39 - WORK DISTRIBUTION

Insofar as practicable, work shall be equitably distributed among the unit employees within classification without favoritism or discrimination. Every attempt will be made to have properly classified technicians perform work classified at their level.

## ARTICLE 40 - MANAGEMENT RIGHTS

The direction of the working forces, and the direction of the affairs of the Employer including, but not limited to the right to hire, promote, transfer, suspend, demote, discipline or discharge for just and proper cause; to make reasonable rules of order and adopt reasonable and appropriate job descriptions and manuals for shop maintenance and work requirements after first negotiating same with union, to lay off or release unit employees for lack of work or for other legitimate reasons; to schedule and allocate work, and otherwise to insure efficient and proper operations are vested with the Employer, provided that none of these rights shall be exercised so as to violate or abrogate the specific provisions of this Agreement.

## ARTICLE 41 - TERM OF AGREEMENT

This Agreement shall be effective January 1, 2021 and shall continue in full force and effect until December 31, 2023 and thereafter from year to year unless either party, not less than sixty (60) days prior to such termination date, by registered mail, signifies in writing its desire to negotiate a renewal agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and have set their hands and seals thereto executing this Agreement by their duly authorized representatives as of the day and year first above written.

Madison Acquisition Group LLC,
d/b/a BMW & Mini of Southampton

By: _____ 12/24/20

United Automobile Workers Local 259

By: _____ President 12/23/20

International Union, United Automobile,
Aerospace, And Agricultural Implement
Workers of America, U.A.W.

By: _____

17

APPENDIX A

Wage Increase/Classification Rate

|  | 01/01/21 | 01/01/22 | 01/01/23 |
|---|---|---|---|
| Technician A (>8yrs): | $43.65 | * | ** |
| Technician A | $41.23 | * | ** |
| Technician B: | $33.64 | * | ** |
| Technician C: | $25.61 | * | ** |

*, ** shall increase in accordance with the below chart

Employees shall receive the following wage increases or the CPI-W Northwest region, whichever is greater. The CPI index shall be the (U.S Department of Labor) CPI-W Urban wage earnings and clerical workers, North East Region:

| Effective: |  |
|---|---|
| January 1, 2022 | 2% or CPI-W rate whichever is greater |
| January 1, 2023 | 2% or CPI-W rate whichever is greater |

* The above classification rates reflect the above wage increases. However, such class rates shall increase based on any CPI-W adjustments.

Productivity & Efficiency: November 1st thru April 30th, the weekly guarantee shall be 40.0 hrs. May 1st thru October 31st, the weekly guarantee shall be 35.0 hrs.

a). the parties agree that is essential that an Incentive Technician be as productive as possible. Therefore, Incentive Technicians should consistently produce chargeable labor hours equal to or greater than actual hours flagged on repair orders.

b). The Employer agrees to pay Technicians time allowances of 1.6 times stated by the applicable service price guide, KSD, for cash paid labor. For Warranty work assignments, Incentive Technicians shall be paid in accordance with OEM time allowances. Existing practices with regards to time allowances for repairs, menus and maintenance shall continue.

c). The Employer agrees that the paying of partial time allowances of work assignments shall be no greater than the time actually spent on a work assignment by a Technician unless otherwise agreed to by the Technician and the Service Management.

d). The parties hereby agree and are committed to ensuring that the distribution of work to Incentive Technicians is undertaken in a fair, equitable, non-discriminatory manner. Any Incentive Technician who believes that the distribution of work to them has been unfair, discriminatory, or otherwise improper may make a complaint to the Service Manager. All such complaints shall be

18

FILED: NASSAU COUNTY CLERK 08/03/2021 01:21 PM   INDEX NO. 619680/2021
NYSCEF DOC. NO. 2                                  RECEIVED NYSCEF: 08/03/2021

promptly investigated and, where appropriate, steps shall be taken to eliminate any unfairness or discrimination in the assignment of work. The results of any such investigation will be communicated to the complaining Incentive Technician. Any Incentive Technician who is unsatisfied with the Employer's response to such a complaint may challenge the Employer's actions pursuant to the grievance and arbitration procedure as set forth in this collective bargaining agreement. Non-producing Technician: Hours will be monitored as present, if technician abuses the benefit of having a guarantee there will be a write up, the union will be contacted and there will be possible dismissal.

**Apprentice:**
Apprentice time produced will be given to the technician that he is shadowing, if apprentice is working on their own then the hours produced for the week will be distributed among the technicians throughout the shop evenly. The apprentice tech will have his own tech number to track hours produced. Apprentice is moved up to a (C) classified technician upon manager's approval only.

### Bonus Rate: all year around

| Hours greater than 40.0 Produced | Retroactive to 1st Hour Produced |
|---|---|
| 43.0 and greater | $1.50 |
| 48.0 and greater | $2.50 |
| 54.0 and greater | $4.00 |

Madison Acquisition Group LLC.
d/b/a BMW & Mini of Southampton

By: _____  1/24/10

United Automobile Workers Local 259

By: _____  President  12/25/20

International Union, United Automobile,
Aerospace, And Agricultural Implement
Workers of America, U.A.W.

By: _____

19

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM          INDEX NO. 613687/2023

NYSCEF DOC. NO. 3                                        RECEIVED NYSCEF: 08/23/2023

# Exhibit "B"

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 08/23/2023



# Local 259 United Auto Workers
## AFL-CIO

**Organize**
**Build Power**
**Win Justice**

LOCAL UNION OFFICERS &
EXECUTIVE BOARD MEMBERS
AT LARGE
Brian Schneck
President

Salvatore D'Auria
First Vice President

Michael DiGiuseppe
Second Vice President

Scott Tyrrell
Secretary-Treasurer

Paul Tuchio
Recording Secretary

Kevin Payton
Guide

Joseph Zaleo
Sergeant-at-Arms

TRUSTEES:
Albert Barnes
William (Bill) Dixon
Robert Rosenberg

BOARD MEMBERS
AT LARGE:
Steve Belter
William (Bill) Ferris
John Gallagher
Andrew Gold
Marvin Morris
Robert Ross
Ronald Semler
Michael Sehi (Jr.)
James Tancora
Brian Tyrell

In Memory of:
Brother William
(Bill) Pickering
Past President
2001-2008

September 21, 2021

Leslie Murphy, Case Manager
American Arbitration Association
120 Broadway, 21st Floor
New York, New York 10271

**Re: Madison Acquisition Group, LLC. -&- Local 259 UAW**

**Grievance: Employer violating the CBA Article 36 – 401K Plan.**

Case Manager Murphy,

A dispute has arisen between the above-referenced Employer and the Union regarding the above-referenced grievance.

As such, would you kindly advise Mr. Scott P. Trivella, Esquire, Trivella & Forte, LLP. 1311 Mamaroneck Road, Ste 170, White Plains, New York, 10605-5225, (914) 949-9075, scott@tfsllp.com on behalf of the Employer and Mr. Joseph T. Cleary, Esquire, Cleary, Josem and Trigiani LLP. Constitution Place, 325 Chestnut Place, Suite 200, Philadelphia, PA, 19106, (215) 735-9099, jtcleary@cjtlaw.org on behalf of the Union as to the availability of an Arbitrator to schedule a hearing on the instant grievance.

If you have any questions, please do not hesitate to contact me.

Thank you,

Brian Schneck, President

Cc: File

80 Jerusalem Avenue
Hicksville, NY 11801-2918
516-433-4579 P
516-433-4915 F
www.UAWLocal259.org

International Union, United Automobile, Aerospace and Agricultural
Implement Workers of America, UAW, AFL-CIO

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM INDEX NO. 613687/2023

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 08/23/2023

# Exhibit

# "C"

Case 1:23-cv-07770   Document 1   Filed 10/18/23   Page 34 of 59 PageID #: 34

In the Matter of the Arbitration

   between

**LOCAL 259, UNITED AUTO WORKERS,
AFL-CIO,**

                               Grievant,

      - and -

**MADISON ACQUISITION GROUP LLC,**

                          Respondent/Employer.

**ARBITRATION
OPINION AND
AWARD**

**Grievance 2022-46** (CBA Article 36 – 401(K) Plan Contributions)

**AAA Case No.: 01-21-0016-6421**

**APPEARANCES**

**For the GRIEVANT/UNION:**

**Trivella & Forte**
Scott Trivella, Esq.
Christopher Smith, Esq.
1311 Mamaroneck Avenue
Suite 170
White Plains, NY 10605

**For the RESPONDENT/EMPLOYER:**

**Cleary, Josen & Trigiani LLP**
Joseph T. Cleary, Esq.
325 Chestnut Street
Suite 200
Philadelphia, PA 19106

**Witnesses:**
For the Grievant: Brian Schneck
For the Respondent/Employer: Jay Decker

**Before:  Elena Cacavas, Esq., Arbitrator**

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 4                                                                 RECEIVED NYSCEF: 08/23/2023

## DECISION OF THE ARBITRATOR

### PROCEDURE

The grievance in this matter was filed against Madison Acquisition Group LLC (MAG) by Local 259, United Auto Workers, AFL-CIO (UAW or Union).[1] The grievance proceeded to arbitration pursuant to a demand filed with the American Arbitration Association (AAA)[2] and on December 4, 2021 I was designated to serve as Arbitrator.[3]  Upon notice to the parties and mutual consent,[4] a hearing was held on July 14, 2022, via video conference, at which both parties were ably represented by counsel and had a full and fair opportunity to introduce evidence, examine and cross-examine witnesses, and make arguments in support of their respective positions. All witness testimony was taken under oath. No person objected to the fairness of the proceeding.  A stenographic record was prepared and the transcript of that was made available on July 28, 2022.

At the onset of the hearing, the Employer raised the issue of arbitrability.  The parties were instructed that the record would be developed on both the threshold issue and the substantive issue.  At the conclusion of the Union's case-in-chief, the Employer moved for a directed decision on the substantive issue underlying this grievance.  Decision was reserved on said motion.  That motion was again asserted at the conclusion of the hearing, and again the decision was reserved.

[1] Union's Exhibit 1.
[2] Joint Exhibit 3.
[3] Arbitrator's Exhibit 1.
[4] Arbitrator's Exhibit 3.
[5] This filing date was extending from August 28, 2022.

2

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM     INDEX NO. 613687/2023
NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 08/23/2023

On October 3, 2022 the parties filed briefs and authority in support of their arguments.[5]

In its brief, the Employer withdrew its arbitrability defense. In reaching the conclusions and making the award set forth herein, the Arbitrator has given full, fair, and careful consideration to the evidence of record, the arguments presented, and all citations offered by the parties.

## ISSUE

The issue before the Arbitrator, as framed by the parties,[6] is:

**1) Whether or not Madison Acquisition Group LLC violated Article 36 of the BMW and MINI Southampton Collective Bargaining Agreement.**

**3) If so, what shall be the remedy?**

## RELEVANT CONTRACTUAL PROVISIONS

The governing CBA, between Madison Acquisition Group LLC d/b/a BMW & MINI of Southampton and United Automobile Workers, Local 259, for the period January 1, 2021 through December 31, 2023, was entered into the record, in its entirety.[7] For the purpose of this discussion, only those provisions which are deemed relevant to the underlying issue are referenced.

**Agreement**

AGREEMENT made and entered this 23rd day of December 2020, by and between Madison Acquisition Group LLC, d/b/a BMW & Mini of Southampton (hereinafter referred to as the "Employer") and United Automobile Workers Local 259 located at 80 Jerusalem Avenue, Hicksville, New York 11801, (hereinafter referred to as the "Union") and its International Union, United Automobile, Aerospace, And Agricultural Implement Workers Of America, U.A.W. 8000 East Jefferson Avenue, Detroit, Michigan 48214.

**Article 1 – Coverage**

The Employer recognizes the Union as the duly authorized representative and the exclusive bargaining agent for all full-time and regular part-time mechanics/technicians employed by the

---

[5] This filing date was extending from August 28, 2022.
[6] *See* Tr., p. 32. The issue was amended from that which was agreed to at hearing in light of the Employer's withdrawal of the arbitrability defense.
[7] Joint Exhibit 1.

3

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 4

INDEX NO. 613687/2023

RECEIVED NYSCEF: 08/23/2023

Employer at 35 Montauk Highway, Southampton, NY 11968. Said recognition by the Employer shall also extend to any location to which the aforementioned mechanics/technicians may be transferred by the Employer. Said mechanics/technicians may be hereinafter referred to collectively as "covered," "unit" or "employees." Excluded are all non-technical employees, such as lot and porter employees, sales and clerical/secretarial employees, managers, professional employees, supervisors, guards, and watchmen, as defined in the Act.

## Article 9 - Grievance and Arbitration[8]

A.      Any dispute concerning the interpretation or application of the terms of the Agreement or any dispute between the parties shall be taken up between the parties pursuant to the following procedure:

1.      All alleged grievances shall, within fifteen (15) days of their occurrence or discovery, first be presented to the service manager by the unit employee or the shop steward covering the employee, or both.

2.      That Service Manager shall within five (5) days after the presentation of the grievance, give his/her disposition to the shop steward and unit employee.

3.      If the grievance is not satisfactorily resolved by the service manager, the unit employee, the Shop Steward and the Local Union Representative shall meet with the general manager or his/her designee within five (5) working days after the conclusion of step two.

B.      Arbitration:

1.      In the event the above procedures do not result in a satisfactory resolution of the grievance or dispute in question, then the dispute shall be submitted to arbitration. Unless the parties agree to designate an arbitrator, the matter shall be submitted to the American Arbitration Association in accordance with its procedures. The Arbitrator's findings, decision and awards shall be final, binding, and conclusive on both of the parties hereto and judgment thereon may be entered in any Court or Forum having jurisdiction. Unless otherwise agreed, the Arbitrator's fee, if any, shall be borne equally by the Employer and the Union.

2.      The Union and the Employer may agree to dispense with the first step and take up such matters directly with each other. No arbitrator shall have any power to add to, subtract from, alter, change, or modify any terms of this Agreement.

## Article 36 – 401K Plan

The Employer shall provide a 401K Plan on behalf of all unit employees. Such plan shall provide for unit employee contributions only. Notwithstanding however, in the event the Employer were to make contributions on behalf of any non-bargaining unit employee or any

[8] The entire Grievance and Arbitration Provision is presented as Union's Exhibit 1. Those excerpts that are relevant to this discussion are presented herein for the purpose of discussion, but were evaluated in the context of the entire provision.

4

other employee in another bargaining unit employed by the Employer equal contributions shall be made on behalf of all Local 259 bargaining unit employees enrolled in the plan. Upon written request by the Union, the Employer shall provide any and all payroll documentation, (i.e., payroll register) for an in-camera review by a party to be determined by the Union, to determine compliance with this Article.

## BACKGROUND AND FACTS

For its case on the merits, the Union presented Local 259 President Brian Schneck who has served in his position for 14 years. Mr. Schneck was involved in the negotiations for the CBA between MAG d/b/a/ BMW & MINI of Southampton and Local 259. He also negotiated the CBA for a Jaguar/Land Rover dealership in Manhattan at which other members of Local 259 are employed. That CBA was identified in the record as being between "GJM OPCO, LLC d/b/a Jaguar Manhattan Land Rover Manhattan and Local 259 United Auto Workers." No mention is made therein of MAG or the Southampton BMW & MINI dealership.

Mr. Schneck explained that employees at Southampton BMW & MINI were previously represented by Local 1102, Retail Warehousing Department Store Employees, until late 2017 when that union disclaimed its representational status. MAG recognized Local 259 and Union leadership met with the dealership's General Manager, Jay Decker, in early 2018 and agreed to carry over most of the existing language in the CBA. Mr. Decker remains the General Manager at Southampton BMW & MINI today.

According to Mr. Schneck, there is common ownership of the BMW & MINI dealership and Jaguar Manhattan Land Rover.[9] However, the employing entity for the BMW & MINI of Southampton is MAG, while an entity identified as "GJM OPCO, LLC" is the employer and contracting party with Local 259 for the Jaguar Manhattan Land Rover dealership. Both operations have separate and distinct units represented by Local 259. Mr. Schneck testified that

---

[9] The common owner is Jonathan Sobel; however, the distinct and separately incorporated employing entities entered into separate CBAs pertaining to each business.

5

he "discovered the discrepancy" in the Local 259 CBAs negotiated for each separate workforce relating to the employees' 401(K) Plan during a routine review of the agreements. The Jaguar/Land Rover CBA requires contributions to be made by "the Employer," identified therein as "GJM OPCP, LLC," on behalf of the Jaguar/Land Rover employees in an amount equal to four percent of their weekly earnings.[10] The BMW & MINI of Southampton CBA, which specifically identifies only MAG as "the Employer," provides that the 401(K) Plan is employee-funded, but if "the Employer were to make contributions on behalf of any non-bargaining unit employee or any other employee in another bargaining unit employed by the Employer," then it must also make equal contributions on behalf of all Local 259 bargaining unit employees enrolled in the plan.  Mr. Schneck opined that because both distinct units are represented by Local 259, and the two distinct dealerships have common ownership by virtue of Mr. Sobel, the employees at each dealership must be treated the same with respect to the 401(K) benefit.

Mr. Schneck reviewed the chain of emails he had with Mr. Decker, Mr. Sobel and counsel for MAG once the "discrepancy" was identified by him.[11]  Therein he asserted that MAG has an obligation under the terms of its CBA with Local 259 to make contributions on behalf of the Southampton employees given the contributions that the Manhattan Jaguar/Land Rover dealership was making on behalf of its employees.

On cross-examination, Mr. Schneck acknowledged that the CBA for Southampton BMW & MINI is exclusively between MAG and Local 259, and the title page expressly identifies only those two parties.[12]  Furthermore, Article 1 identifies "the Employer" as MAG.[13]  The unit

---

[10] *See* Union's Exhibit 2, Article 23.
[11] Union's Exhibit 1.
[12] Joint Exhibit 1; Tr., pp. 135, 137-138.
[13] Tr., p. 140.

description identifies "all full-time and regular part-time mechanics/technicians employed by the Employer at 35 Montauk Highway, Southampton, N.Y."[14]   Those are, Mr. Schneck conceded, the only employees represented by the Union at that location.[15]   He also conceded that the negotiations for that CBA were between only MAG and Local 259.[16]   Additionally, he acknowledged that the language of Article 36 governing the 401(K) Plan speaks to contributions made "by the Employer" to "another bargaining unit employed by the Employer."[17]

For its case, the Employer presented Jay Decker, who has worked as General Manager of the Southampton dealership for 11 years.  He said the dealership is owned by MAG, and MAG is his Employer and the Employer of all employees there, including those represented by Local 259.[18]   Mr. Decker confirmed that he signed the CBA between MAG and Local 259.  He also confirmed that "the Employer" therein is identified as MAG, the "union" is identified as Local 259, and the unit is identified as those represented employees "employed by the Employer."  The only employees discussed at negotiations on that CBA, he noted, were those persons employed by MAG at the Southampton location.  Asked about his understanding of Article 36, Mr. Decker said he assumes that "the Plan" refers to the MAG plan for the Southampton dealership and reiterated that "the Employer" refers expressly to MAG.  He commented, "That's the only employer any of us work for."[19]   Mr. Decker also confirmed that MAG has never made any contributions to the employee 401(K) Plan and that there was no agreement during negotiations

[14] Joint Exhibit 1, Article 1.
[15] Tr., p. 143.
[16] Id.
[17] Tr., pp. 150-151.
[18] He explained that the showroom is at a separate Southampton location from the repair shop at 35 Montauk Highway, at which the unit employees work.
[19] Tr., p. 173.

7

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM
NYSCEF DOC. NO. 4

INDEX NO. 613687/2023
RECEIVED NYSCEF: 08/23/2023

that MAG would be required to contribute to the Plan if any other employer of employees represented by Local 259 did so. "It was never brought up as a topic," he testified.[20]

On cross-examination, Mr. Decker maintained that the 401(K) Plan referenced in Article 36 is available to MAG employees. Asked if other dealerships are part of that Plan, he said he does not know.[21] Asked then what the reference in Article 36 to "other employees" means, he testified to his understanding that it relates to all of the other employees of the BMW & MINI Southampton dealership besides the eight or nine in the unit, such as salespersons, car washers, drivers, etc.[22] With respect to the meaning of the CBA's reference to "any other employee in a bargaining unit," Mr. Decker said he has understood that to mean if another unit within the dealership is formed.[23]

## POSITIONS OF THE PARTIES

<u>The Union</u>

The Union asserts that the record demonstrates that the Employer failed to honor its obligation to make weekly contributions to the 401(K) Plan on behalf of unit employees, as required by Article 36 of the CBA. That obligation allegedly was triggered by the contributions made by GJM OPCO, LLC for employees at Manhattan Jaguar/Land Rover who are also represented by Local 259. The Union argues that "the Employer" referenced in the BMW & MINI of Southampton CBA is is not merely "Madison Acquisition Group LLC d/b/a as BMW &

---

[20] Tr., 174.

[21] Tr., 175. Entered into evidence as Joint Exhibit 2 is "Madison Acquisition Group LLC 401K Profit Sharing Plan and Trust" which sets eligibility for participation therein as being "a common law employee of one or more of the following (individually and collectively, the 'Employer')" and goes on to list Jaguar/Land Rover Manhattan and "Madison Acquisition Group LLC," but not specifically BMW & MINI of Southampton. The Plan's definition of "the Employer" is notably different from the definition in the BMW & MINI Southampton CBA.

[22] Tr., pp. 176-177.

[23] Tr., p. 177.

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM
NYSCEF DOC. NO. 4

INDEX NO. 613687/2023
RECEIVED NYSCEF: 08/23/2023

MINI of Southampton," but rather a collection of dealerships owned by one individual, Mr. Sobel, under the Madison Acquisition Group LLC banner, and collectively regarded as "the Employer." And, it opines that the language of the CBA at issue makes clear that contributions must be made on behalf of the Southampton BMW & MINI unit employees once the Employer contributes to "any of its bargaining unit employees."

The Employer

The Employer asserts that MAG operates the dealership known as BMW & MINI of Southampton and is expressly identified as "the Employer" in the CBA with Local 259. The unit, consisting of mechanics and technicians, is solely limited, again by the express terms of the CBA, to full-time and regular part-time employees at the Southampton, New York location. The Employer argues that MAG is not the Employer at any other location. Hence, under the plain meaning of Article 36, MAG is not required to make contributions on behalf of its unit employees because it has never done so for any of its employees, the pool of which is limited to the BMW & MINI of Southampton dealership. The Employer further opines that this conclusion is unaltered by the fact that the Madison Acquisition Group LLC 401(K) Profit Sharing Plan and Trust[24] permits employees from several dealerships to participate. The creation of that opportunity for participation is not tantamount to an agreement by MAG to make employee contributions; the 401(K) Plan document contains no such language, nor does the CBA. The Employer urges that the Arbitrator must leave any issue of 401(K) contributions to future negotiations and not allow the Union to obtain through this process that which was never contemplated at the bargaining table, as evident from the express language of the relevant CBA.

## DISCUSSION AND FINDINGS

---

[24] Joint Exhibit 2.

9

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 08/23/2023

The issue presented to me by agreement of the parties asks if MAG violated Article 36 of the CBA by failing to make Employer contributions to the 401(K) Plan for employees of MAG and the Southampton BMW & MINI dealership. The answer to that question is "no" insofar as there is no evidence to support a conclusion that the Employer, MAG, made contributions on behalf of any other employees. In fact, the unrebutted testimony of Mr. Schneck confirmed that.

While the interpretation of an agreement, or a term thereof, is the ascertainment of its meaning, a fundamental principle of arbitration provides that it is not for an arbitrator to rewrite a contract.[25] When agreements are interpreted, the primary objective is "to give effect to the intent of the contracting parties as revealed by the language they chose to use."[26] Hence, the language selected by the parties must be given full force and, absent ambiguity, cannot be changed in the arbitral forum. Most collective bargaining agreements explicitly enforce that directive when they provide, as does the one before me, that the arbitrator shall have no authority to add to, subtract from, alter, change, or modify and term of the agreement.[27] In the case presented to me for resolution, I find no ambiguity to the CBA's terms and decline to change or alter those based on external concepts of ownership and/or the availability to employees of various employers of a shared 401(K) Plan.

Critical to the Union's claim is identifying who the employer is under the CBA governing the Southampton BMW & MINI dealership. The Union seems to assert that the employer is any business entity connected to Mr. Sobel. It relies, in part, on the commonality of Local 259's representation of employees at various dealerships and the existence of a 401(K) Plan created by MAG which has been made available to those individuals. However, the record

---

[25] Restatement (First) of Contracts § 226 (1932); Restatement (Second) of Contracts § 200 (1979).
[26] *Bourne v. Walt Disney Co.,* 68 F.3d 621, 628-29 (2d Cir. 1995).
[27] Joint Exhibit 1, Article 9.

10

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 08/23/2023

defies those assertions. The CBA in question controls this analysis and is specifically between MAG d/b/a BMW & MINI of Southampton and Local 259. The "Employer" is identified therein as only MAG d/b/a BMW & MINI of Southampton. And, the unit is described as consisting of only those employees of "the Employer" at the Southampton BMW & MINI dealership. The record is devoid of any evidence upon which one could conclude that the language of Article 36 was intended to apply to any employing entity other than the identified Employer per the terms of the CBA. The record is also devoid of any evidence that that Employer has made any 401(K) contributions for any of its employees.

With respect to Local 259's argument regarding MAG's sponsorship of its 401(K) Profit Sharing Plan and Trust, I cannot conclude that that action, or the language of the Plan, operates with the force and effect of altering or adding to, by implication, the express language of the BMW & MINI of Southampton CBA. While the Plan does provide for employees of 15 individual dealerships under the ownership umbrella of MAG to participate, there is no basis upon which to construe that to create a contributory obligation. No such language in the CBA before me exists. And, to the extent that Local 259 asserts that the Plan is evidence that "the employer" is all dealerships under the MAG umbrella, there is no basis upon which such a conclusion could be applied to the instant analysis so as to alter the CBA's express identification of "the Employer" as only MAG d/b/a BMW & MINI of Southampton. MAG's provision to employees of various distinct employers of the opportunity to participate in the Plan and Trust is not tantamount to agreeing to make employer contributions for any Local 259-represented employees who elect to participate from the various dealerships. Neither the Plan and Trust document, nor more importantly the BMW & MINI of Southampton CBA, contain language creating that obligation. To change the express language of two separately negotiated CBA's

11

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 08/23/2023

specific to two separate and distinct employment relationships by virtue of the Plan and Trust document runs counter to the most basic precepts of arbitration.

Based on the clear language of the CBA before me, I can only conclude that MAG d/b/a BMW & MINI of Southampton and the Union have negotiated a 401(K) provision that unit employees may fund on their own behalf. If at any point MAG d/b/a BMW & MINI of Southampton makes 401(K) contributions on behalf of any other of *its* employees, it will have then met the condition precedent to trigger its obligation to contribute in like amount to those employees represented at the dealership by Local 259. I find no basis to conclude that the actions of any other employing entity can trigger the clear and unequivocal contribution language of Article 36. To the extent that the Union claims that MAG is part of a family of companies under the common ownership of Mr. Sobel, that corporate structure cannot override the controlling language of the CBA. MAG d/b/a BMW & MINI of Southampton, a separately incorporated entity, is the only "Employer" governed by the terms of the CBA with Local 259 at BMW & MINI of Southampton. Since there is no evidence that the Employer has made 401(K) contributions on behalf of any employee, the contributory obligation under Article 36 of the CBA between it and Local 259 has not been triggered.

Based on the foregoing, I find that there was no violation of the CBA and the grievance is dismissed on the merits.

Regarding the Employer's claim that this action is frivolous and, therefore, worthy of costs, I find no basis to believe that the Union pursued this matter in other than good faith. A frivolous claim refers to legal action that is intended to harass, delay or embarrass the opposition. A claim is frivolous when the claim lacks any arguable basis either in law or in fact.[28] In

---

[28] *Neitze v. Williams*, 490 U.S. 319, 325 (1989).

arbitration, it is not customary to award costs unless 1) the contract so provides, 2) there is evidence of bad faith, or 3) a statute or public policy permits shifting the cost to the losing party.[29]  Here, none of those conditions exist.  Moreover, the record indicates that the Union acted based on its firm belief that a shared 401(K) Plan, shared Union representation, and common ownership of multiple separate  corporate entities by an individual justified its claim.  That the Employer, and ultimately I, disagree with that conclusion does not rob it of its legitimacy in the eyes of the Union or cast it as having no arguable basis.  I find no justification for the assertion that an award of costs is warranted in the interest of justice.[30]

*[The remainder of this page is intentionally left blank.]*

---

[29] *See How Arbitration Works,* Elkouri & Elkouri (8th Ed.), at Ch. 18.3.H.
[30] *See Internal Revenue Serv.,* 113 LA 425, 428 (Snow, 1999).

13

## AWARD

After full and careful consideration of the record, and all arguments and authority presented, and for the reasons fully discussed in the Opinion above, I find and award as follows:

**Madison Acquisition Group LLC did not violate Article 36 of the Collective Bargaining Agreement between Madison Acquisition Group LLC d/b/a BMW & MINI of Southampton and Local 259 United Auto Workers.**

**The grievance is dismissed.   Costs are not awarded.**

Dated:  October 14, 2022

/ *Elena Cacavas* /

Elena Cacavas, Esq., Arbitrator

## AFFIRMATION

STATE OF NEW YORK            )
                                                    ss.:
COUNTY OF NASSAU          )

I, ELENA CACAVAS, ESQ., an attorney admitted to the practice of law in the State of New York, do hereby affirm that I am the impartial Arbitrator designated by the parties to hear and decide the above matter, and that I executed the foregoing as and for my Opinion and Award.

October 14, 2022

/ *Elena Cacavas* /

Elena Cacavas, Esq., Arbitrator




# NYSCEF Confirmation Notice
## Nassau County Supreme Court

The NYSCEF website has received an electronic filing on 08/23/2023 03:28 PM. Please keep this notice as a confirmation of this filing.

**613687/2023**

**MADISON ACQUISITION GROUP, LLC v. LOCAL 259, UNITED AUTO WORKERS, AFL-CIO**

**Assigned Judge: None Recorded**

### Documents Received on   08/23/2023 03:28 PM

| Doc # | Document Type |
| --- | --- |
| 1 | PETITION |
| 2 | EXHIBIT(S) A |
| 3 | EXHIBIT(S) B |
| 4 | EXHIBIT(S) C |
| 5 | NOTICE OF PETITION |
| 6 | RJI -RE: NOTICE OF PETITION |

### Filing User

Christopher A. Smith | 111csmith111@gmail.com
1311 Mamaroneck Ave Ste 170, White Plains, NY 10605

### E-mail Notifications

An email regarding this filing has been sent to the following on 08/23/2023 03:28 PM:

**CHRISTOPHER A. SMITH - 111csmith111@gmail.com**

**Maureen O'Connell, Nassau County Clerk - http://www.nassaucountyny.gov/agencies/Clerk/index.html**
Phone: 516-571-2660      Website: http://www.nassaucountyny.gov/agencies/Clerk/index.html

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 1 of 2

 

# NYSCEF Confirmation Notice
## Nassau County Supreme Court

**613687/2023**

**MADISON ACQUISITION GROUP, LLC v. LOCAL 259, UNITED AUTO WORKERS, AFL-CIO**
**Assigned Judge: None Recorded**

## Email Notifications NOT Sent

| Role | Party | Attorney |
|------|-------|----------|
| Respondent | LOCAL 259, UNITED AUTO WORKERS, AFL-CIO | No consent on record. |

\* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

**Maureen O'Connell, Nassau County Clerk -** http://www.nassaucountyny.gov/agencies/Clerk/index.html
Phone: 516-571-2660      Website: http://www.nassaucountyny.gov/agencies/Clerk/index.html

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 08/23/2023



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 02/01/2022)

Supreme COURT, COUNTY OF Nassau

Index No: _____    Date Index Issued: _____

| | **For Court Use Only:** |
|---|---|
| | IAS Entry Date |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

MADISON ACQUISITION GROUP, LLC

Plaintiff(s)/Petitioner(s)

Judge Assigned

-against-

LOCAL 259, UNITED AUTO WORKERS, AFL-CIO

RJI Filed Date

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING:   Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ☐ Adult Survivors Act
- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☐ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☒ CPLR Article 75 - Arbitration   [see NOTE in COMMERCIAL section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify):  ☐ Initial   ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ☐ Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**   Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential   ☐ Commercial
  Property Address: _____
  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ☐ Partition
  *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ☐ Tax Certiorari (specify):  Section: _____  Block: _____  Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see NOTE in COMMERCIAL section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

## STATUS OF ACTION OR PROCEEDING   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION   Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice    Date Issue joined: _____
- ☐ Notice of Motion    Relief Requested: _____    Return Date: _____
- ☒ Notice of Petition    Relief Requested: OTHER RELIEF    Return Date: 09/29/2023
- ☐ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ☐ Other Ex Parte Application    Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

FILED: NASSAU COUNTY CLERK 08/23/2023 03:28 PM
NYSCEF DOC. NO. 6

INDEX NO. 613687/2023
RECEIVED NYSCEF: 08/23/2023

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI Addendum (UCS-840A). | | | |
|---|---|---|---|---|
| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI Addendum (UCS-840A). | | |
|---|---|---|---|---|
| Un-Rep | Parties List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined For each defendant, indicate if issue has been joined. | Insurance Carriers For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: MADISON ACQUISITION GROUP, LLC Role(s): Plaintiff/Petitioner | CHRISTOPHER SMITH, CHRISTOPHER SMITH, 1311 MAMARONECK AVE STE 170 , WHITE PLAINS, NY 10605, 111csmith111@gmail.com | ☐ YES  ☒ NO | |
| ☒ | Name: LOCAL 259, UNITED AUTO WORKERS, AFL-CIO Role(s): Defendant/Respondent | 80 Jerusalem Avenue, Hicksville, NY 11801 | ☐ YES  ☒ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    08/23/2023

CHRISTOPHER A. SMITH
Signature

2354744
Attorney Registration Number

CHRISTOPHER A. SMITH
Print Name

This form was generated by NYSCEF



# NYSCEF Confirmation Notice
## Nassau County Supreme Court

The NYSCEF website has received an electronic filing on 08/23/2023 03:28 PM. Please keep this notice as a confirmation of this filing.

**613687/2023**

**MADISON ACQUISITION GROUP, LLC v. LOCAL 259, UNITED AUTO WORKERS, AFL-CIO**

**Assigned Judge: None Recorded**

## Documents Received on  08/23/2023 03:28 PM

| Doc # | Document Type |
|---|---|
| 1 | PETITION |
| 2 | EXHIBIT(S) A |
| 3 | EXHIBIT(S) B |
| 4 | EXHIBIT(S) C |
| 5 | NOTICE OF PETITION |
| 6 | RJI -RE: NOTICE OF PETITION |

## Filing User

Christopher A. Smith | 111csmith111@gmail.com
1311 Mamaroneck Ave Ste 170, White Plains, NY 10605

## E-mail Notifications

An email regarding this filing has been sent to the following on 08/23/2023 03:28 PM:

**CHRISTOPHER A. SMITH - 111csmith111@gmail.com**

**Maureen O'Connell, Nassau County Clerk -** http://www.nassaucountyny.gov/agencies/Clerk/index.html
Phone: 516-571-2660    Website: http://www.nassaucountyny.gov/agencies/Clerk/index.html

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 1 of 2




# NYSCEF Confirmation Notice
## Nassau County Supreme Court

**613687/2023**

**MADISON ACQUISITION GROUP, LLC v. LOCAL 259, UNITED AUTO WORKERS, AFL-CIO**

**Assigned Judge: None Recorded**

## Email Notifications NOT Sent

| Role | Party | Attorney |
|------|-------|----------|
| Respondent | LOCAL 259, UNITED AUTO WORKERS, AFL-CIO | No consent on record. |

\* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

# EXHIBIT B

INDEX NO. 613687/2023
NYSCEF DOC. NO. 7
RECEIVED NYSCEF: 10/10/2023

SUPREMNE COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------x
In the Matter of the Application of

MADISON ACQUISITION GROUP, LLC,

                           Petitioner,

for a Judgment Pursuant to Article 75 of the Civil Practice
Law and Rules Confirming an Arbitration Award,

               -against-

LOCAL 259, UNITED AUTO WORKERS, AFL-CIO,

                     Respondent.

-------------------------------------------------------------------x

**Index Number: 613687/2023**

**AMENDED NOTICE OF
VERIFIED PETITION TO
CONFIRM AN ARBITRATION
AWARD**

**Assigned to: Honorable Denise Sher**

S I R S:

    **PLEASE TAKE NOTICE,** that upon the annexed Verified Petition of MADISON
ACQUISITION GROUP, LLC verified by the Petitioner, MADISON ACQUISITION GROUP,
LLC, on the 21th day of August, 2023, the award of the Arbitrator Elena Cacavas, Esq. dated,
signed and affirmed on October 14th, 2022, in the arbitration proceedings between the Petitioner,
MADISON ACQUISITION GROUP, LLC and the Respondent, LOCAL 259, UNITED AUTO
WORKERS, AFL-CIO, delivered to the Respondent on or about October 15, 2022, and upon all
prior papers and proceedings heretofore had herein, an application will be made to the Nassau
County Supreme Court, located at  100 Supreme Court Drive Mineola, NY 11501, on the 3rd day
of November, 2023, at 9:30 o'clock in the fore noon of that day, or as soon thereafter as counsel
can be heard, for a judgment pursuant to CPLR 7510 confirming the attached arbitration award
and directing that judgment be entered thereon, and for such other and further relief as may be just,
proper and equitable, together with the attorneys' fees, costs and disbursements of this proceeding.

1

INDEX NO. 613687/2023
RECEIVED NYSCEF: 10/10/2023

NYSCEF DOC. NO. 7

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214, all answering papers, if any, are required to be served at least seven days prior to the return date of this motion.

The Petitioner designates Nassau County as the place of trial. The basis of venue is the principal office of the Respondent, which is 80 Jerusalem Avenue, Hicksville, NY 11801. CPLR 503.

Dated: White Plains, New York
October 10, 2023

Yours, etc.,

TRIVELLA & FORTE, LLP

*/s/Christopher Smith*_____
*Attorneys for the Petitioner*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
(914) 949-9075

To:

Joseph Cleary, Esq.
Cleary, Josem & Trigiani LLP
Constitution Place
325 Chestnut Street, Suite 200
Philadelphia, PA 19106

Local 259, United Auto Workers, AFL-CIO
80 Jerusalem Avenue
Hicksville, NY 11801

2




# NYSCEF Confirmation Notice
## Nassau County Supreme Court

The NYSCEF website has received an electronic filing on 10/10/2023 11:46 AM. Please keep this notice as a confirmation of this filing.

### 613687/2023
### MADISON ACQUISITION GROUP, LLC v. LOCAL 259, UNITED AUTO WORKERS, AFL-CIO
### Assigned Judge: Denise Sher

## Documents Received on   10/10/2023 11:46 AM

| Doc # | Document Type |
|---|---|
| 7 | NOTICE OF PETITION (AMENDED), Motion #001 |

## Filing User

Christopher A. Smith | 111csmith111@gmail.com
1311 Mamaroneck Ave Ste 170, White Plains, NY 10605

## E-mail Service Notifications

An email regarding this filing has been sent to the following on 10/10/2023 11:46 AM:

**CHRISTOPHER A. SMITH - 111csmith111@gmail.com**

## Email Notifications NOT Sent

| Role | Party | Attorney |
|---|---|---|
| Respondent | LOCAL 259, UNITED AUTO WORKERS, AFL-CIO | No consent on record. |

* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

---

**Maureen O'Connell, Nassau County Clerk - http://www.nassaucountyny.gov/agencies/Clerk/index.html**
Phone: 516-571-2660    Website: http://www.nassaucountyny.gov/agencies/Clerk/index.html

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 1 of 1

# EXHIBIT C

10/16/23, 12:28 PM

Document List

NYSCEF - New York State Courts Electronic Filing (Live System)

<< Return to **Search Results**

## 613687/2023 - Nassau County Supreme Court

Short Caption: **MADISON ACQUISITION GROUP, LLC v. LOCAL 259, UNITED AUTO WORKERS, AFL-CIO**
Case Type: **Special Proceedings - CPLR Article 75**
Case Status: **Active**
eFiling Status: **Partial Participation Recorded**
Assigned Judge: **Denise Sher**

E-mail Participating Parties

### Narrow By Options

| | | | | |
|---|---|---|---|---|
| Document Type: | Please select... | ⌄ | Filed By: | |
| Please select... | | ⌄ | | |
| Motion Info: | Please select... | ⌄ | Filed Date: | |
| | 🗓 thru | 🗓 | | |
| Document Number: | | | | |

Display Document List with Motion Folders 📂

Sort By:  Doc #   ⌄

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 1 | PETITION | Smith, C. | **Processed** |
| | *Verified Petition to Confirm An Arbitration Award* | Filed: 08/23/2023 | Confirmation Notice |
| | | Received: 08/23/2023 | |
| 2 | EXHIBIT(S) - A | Smith, C. | **Processed** |
| | *Exhibit A* | Filed: 08/23/2023 | Confirmation Notice |
| | | Received: 08/23/2023 | |
| 3 | EXHIBIT(S) - B | Smith, C. | **Processed** |
| | *Exhibit B* | Filed: 08/23/2023 | Confirmation Notice |
| | | Received: 08/23/2023 | |
| 4 | EXHIBIT(S) - C | Smith, C. | **Processed** |
| | *Exhibit C* | Filed: 08/23/2023 | Confirmation Notice |
| | | Received: 08/23/2023 | |
| 5 | NOTICE OF PETITION  (Motion #001) | Smith, C. | **Processed** |
| | *Notice of Verified Petition to Confirm an Arbitration Award* | Filed: 08/23/2023 | Confirmation Notice |
| | | Received: 08/23/2023 | Payment Receipt |
| 6 | RJI -RE: NOTICE OF PETITION | Smith, C. | **Processed** |
| | | Filed: 08/23/2023 | Confirmation Notice |
| | | Received: 08/23/2023 | Payment Receipt |
| 7 | NOTICE OF PETITION (AMENDED)  (Motion #001) | Smith, C. | *** Pending *** |
| | *Amended Notice of Petition* | Filed: 10/10/2023 | Confirmation Notice |
| | | Received: 10/10/2023 | |
| 8 | PROOF OF SERVICE  (Motion #001) | Smith, C. | **Processed** |
| | *Affidavit of Service* | Filed: 10/11/2023 | Confirmation Notice |
| | | Received: 10/11/2023 | |